# EXHIBIT A

```
     L29dreec
                          Teleconference
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,                New York, N.Y.

 4            v.                              20 Cr. 0500(JGK)

 5   SAMUEL REED, et al.,

 6                 Defendants.

 7   ------------------------------x

 8
                                              February 9, 2021
 9                                            11:30 a.m.

10
     Before:
11
                       HON. JOHN G. KOELTL,
12
                                              District Judge
13

14                  APPEARANCES (by telephone)

15   AUDREY STRAUSS
          United States Attorney for the
16        Southern District of New York
     BY:  JESSICA GREENWOOD
17        Assistant United States Attorney

18   LATHAM & WATKINS LLP (NY)
          Attorneys for Defendant
19   BY:  DOUGLAS KENT YATTER
          BENJAMIN NAFTALIS
20        JACK NcNEILY

21

22

23

24

25
```

                              Teleconference

1              (Teleconference initiated)
2              THE LAW CLERK:  Hello, everyone.  Judge Koeltl is now
3    on the line.
4              THE COURT:  Mr. Fletcher, call the case.
5              THE CLERK:  United States of America versus Samuel
6    Reed.  Will all parties please state who they are for the
7    record?
8              MS. GREENWOOD:  Yes.  Good morning, your Honor.
9    Assistant United States Attorney Jessica Greenwood on behalf of
10   the government.
11             MR. YATTER:  Good morning, your Honor.  Douglas
12   Yatter, together with my partner Ben Naftalis and our colleague
13   Jack McNeily, from Latham & Watkins on behalf of Mr. Reed, who
14   is also present.
15             THE COURT:  OK.  Good morning, all.
16             We're doing the conference today by telephone because
17   we have a national emergency.  As a result of the pandemic, we
18   also have a court emergency that's been declared by our Chief
19   Judge, so we all can't be present in court.  The interests of
20   justice would be harmed if we did not go forward with the
21   conference because it's important that the case move forward,
22   and I had previously scheduled the conference for today.
23             Does the defendant waive his right to be present in
24   person and voluntarily agree that the proceeding may be by
25   telephone?

1           MR. YATTER:  He does, your Honor.
2           THE COURT:  Mr. Yatter.
3           MR. YATTER:  Yes, your Honor.  He does.
4           THE COURT:  OK.  Is that right, Mr. Reed?
5           THE DEFENDANT:  That is correct, your Honor.
6           THE COURT:  OK.  Mr. Yatter, has the defendant signed
7    a written waiver?
8           MR. YATTER:  We did, your Honor, in connection with
9    the appearance in the fall, which I believe is broad enough to
10   carry forward, but we would be -- if necessary, we're happy to
11   sign another one for today.
12          THE COURT:  OK.  Mr. Fletcher will provide you with
13   another copy.
14          Have I made the Rule 5(f) announcement at the prior
15   conference?
16          (Pause)
17          People can't recall so let me just do it again.
18          I direct the prosecution to comply with its
19   obligations, under Brady v. Maryland and its progeny, to
20   disclose to the defense all information, whether admissible or
21   not, that is favorable to the defendant, material either to
22   guilt or to punishment, and known to the prosecution.  Possible
23   consequences for noncompliance may include dismissal of
24   individual charges or the entire case, exclusion of evidence
25   and professional discipline or court sanctions on the attorneys

                         Teleconference
1    responsible.
2              I will be entering or have already entered a written
3    order fully describing this obligation and the possible
4    consequences of failing to meet it, and I direct the
5    prosecution to review and comply with that order.
6              Does the prosecution confirm that it understands its
7    obligations and will fulfill them?
8              MS. GREENWOOD:  Yes, your Honor.
9              THE COURT:  Ms. Greenwood, thank you.
10             Looking over the docket sheet very quickly, I don't
11   see a Rule 5(f) note so we'll enter a Rule 5(f) order.
12             OK.  So --
13             MR. YATTER:  Your Honor, this is Doug Yatter.  I
14   believe the Court did enter the order.
15             THE COURT:  Yes.  November --
16             MR. YATTER:  It is -- yes, it is in the November time
17   period.
18             THE COURT:  Right.  Item number 21 on the docket
19   sheet, yes.
20             MR. YATTER:  Correct, your Honor.
21             THE COURT:  And I do recall making disclosures with
22   respect to Latham & Watkins and Mr. Naftalis.
23             OK.  Ms. Greenwood, where are we?
24             MS. GREENWOOD:  Yes, your Honor.  Since the last
25   conference, the government has been working to produce

discovery to Mr. Reed.  The vast majority of the materials in the government's possession have now been produced, including witness 3500 material that the government agreed to produce orally voluntarily.

The government has some small data sets currently awaiting production that consist of subpoena returns that the government received more recently and is still processing for production, and, in addition, we're working to reproduce or rebate some items that we've been discussing with defense counsel to provide to them.  And so that is sort of where we are with respect to production of discovery to Mr. Reed.

I'm not sure if the Court would like an update on where we are with the remaining three defendants, but that's the current update with regard to Mr. Reed.

THE COURT:  Well, sure.  What's the status of the other codefendants?

MS. GREENWOOD:  So the status right now, your Honor, as you know, none of the remaining codefendants has appeared as yet.  We have been in discussions with counsel for each of them.  We with respect to defendant Hayes have discussed a surrender date of April 6, 2021 in Hawaii, and then we will -- I think the plan is to notify the Court in advance of that appearance and discuss logistics for having him surrender and presented in Hawaii and then to remotely appear before your Honor, and so we anticipate making a submission to you about

1    that as we sort of near that date for him to arrive.

2              We are also in discussions with counsel --

3              THE COURT:  I'm sorry.  Whoa.  Whoa.  I'm sorry.  You

4    said two things which didn't seem to be consistent.  You talked

5    about his arrival here and all of the arrangements in Hawaii.

6              MS. GREENWOOD:  Sorry, your Honor, to the extent that

7    that was not clear.  So the defendant Hayes is currently

8    residing abroad in Singapore.  We have discussed with counsel

9    how to arrange for a voluntary surrender, and he has proposed

10   appearing within the United States in Hawaii and having his

11   initial appearance there and then, subsequent to his

12   presentment in Hawaii, to arrange for a virtual appearance

13   before your Honor rather than appearing in the Southern

14   District of New York physically, that he would appear before

15   your Honor remotely, having surrendered within the United

16   States to the marshals.

17             THE COURT:  Is he coming to New York?

18             MS. GREENWOOD:  He is not at this point planning to

19   come to New York.  So we had discussed using a procedure

20   similar to what we've used with defendants that are in other

21   districts within the United States whereby he would be arrested

22   and presented in another district and then appear in this

23   district remotely.  And so that has been the discussion with

24   counsel for Hayes.  Rather than him physically appearing within

25   the Southern District, that his initial appearance be within

1    the United States and that he be allowed to appear remotely

2    before your Honor.

3             THE COURT:  Until when?

4             MS. GREENWOOD:  Umm --

5             THE COURT:  I assume the parties are contemplating a

6    trial at some point.  Difficult if one of the defendant is in

7    Hawaii.

8             MS. GREENWOOD:  Well, so, your Honor, I think the

9    discussion at least with defense counsel and assuming there are

10   no changes and pending approval by your Honor, the idea would

11   be that he would appear initially in Hawaii, then appear before

12   your Honor remotely, and then he would continue to reside

13   abroad with travel to the United States for appearances as

14   needed and, of course, if there is a trial, that he would

15   appear within the United States for that trial in New York.

16            THE COURT:  OK.  He would continue to reside abroad,

17   not in Hawaii?

18            MS. GREENWOOD:  That has been the discussion, and that

19   is the proposed bail package that we would be presenting for

20   your Honor.  It would include agreement by the government that

21   he be permitted to continue to reside abroad and that he would

22   be traveling to the United States, if necessary, for court

23   appearances and meetings with counsel.

24            THE COURT:  OK.  Go ahead.

25            MS. GREENWOOD:  With respect to defendant Ben Delo,

1   your Honor, there have likewise been discussions about
2   arranging for his surrender.  He is planning, or at least
3   counsel has represented that he is planning to appear in New
4   York.  We are working with the FBI and Border Patrol to obtain
5   immigration authorization for him to be permitted to come here.
6   There are some complications with the UK travel ban and sort of
7   immigration requirements for him, but we have an application
8   pending through the FBI and the Border Patrol and we anticipate
9   him having clearance to travel to appear in New York within the
10  next 30 days, and so our understanding and representation from
11  counsel is that once that approval is in hand, that he will
12  appear in this district to surrender in this case.
13            THE COURT:  OK.
14            MS. GREENWOOD:  The last remaining defendant, Greg
15  Dwyer, is residing in Bermuda.  We have also been in
16  discussions with his counsel about obtaining his appearance.
17  We were unable to negotiate a voluntary surrender so we have
18  begun extradition proceedings against him in Bermuda.  And we
19  anticipate -- or we understand from counsel that those
20  proceedings will be unopposed, but, like I said, we were not
21  able to negotiate a voluntary surrender with him.
22            So with respect to the remaining three defendants, you
23  know, we've been in contact with counsel discussing the
24  possibility of appearing.  They've all made representations
25  about for when and how they'll appear.  We have no guarantees

1  at this point that any of those things will happen, but, like I
2  said, those are the plans and hopes with respect to the
3  appearance of the remaining three defendants.
4         THE COURT:  So nothing earlier than April?
5         MS. GREENWOOD:  Potentially, your Honor, with respect
6  to Mr. Delo, like I said, there may be approval within the next
7  30 days and so his may be somewhat sooner, but then, like I
8  said, Hayes would be in April, and it's really difficult to
9  predict a timeline for Mr. Dwyer because he is going through an
10 extradition proceeding in Bermuda that could take some months.
11        THE COURT:  OK.  So what do the parties propose with
12 respect to Mr. Reed?
13        MS. GREENWOOD:  Certainly, your Honor.  Given that we
14 have no guarantees about appearance for the remaining
15 defendants, we see no reason not to move forward with setting a
16 schedule.
17        MR. YATTER:  Your Honor, this is Mr. Yatter.
18        THE COURT:  Yes.
19        MR. YATTER:  With regard to -- just to address that,
20 your Honor.
21        As Ms. Greenwood noted, the government continues to
22 make productions.  At the conference when we spoke in the fall,
23 the vision was that those would be largely complete by
24 mid-December, but the productions are continuing and we're
25 working through those.

Teleconference

We've also raised some questions with the government about the productions -- growing out of the productions as to their completeness in some regards and the government's handling of certain materials, including privileged information and a taint issue that was brought to our attention some weeks ago, about two month ago, which we're asking questions about. We've also asked for additional Brady disclosures from the government. And, you know, we don't have any issues to bring to your Honor's attention today specifically, but we wanted to flag those as we're still discussing them with the government and awaiting further information in response to the questions that we've asked.

Also, it's possible we will need to come back at some point on the protective order that your Honor entered in November. As Ms. Greenwood mentions, the government has been producing early 3500 material, which we appreciate. We have been working through that material, but it's been complicated by the fact that even though that material is already marked for the highest protection under the order, the government has been redacting names of witnesses. We've asked the government about that during the discussion.

So we continue to work through the discovery materials and think we'll be in a better position to discuss scheduling for next steps once that's complete and, of course, when the other defendants are here, based on the update that

Teleconference

1  Ms. Greenwood gave.

2  THE COURT:  I don't see it as reasonably possible for
3  me to set up a motion and trial schedule at this point given
4  the uncertainties with respect to the completion of production
5  as well as the issues with respect to the other defendants.  I
6  don't see a reasonable alternative to setting the case down for
7  another conference in May by which time I assume, based upon
8  what's been said, that the government will have completed
9  discovery and the defendants may be in a position to tell me
10 what motions, if any, the defense intends to make, and we'll
11 have a better idea with respect to a trial date and the other
12 defendants.

13 Is it really the government's position that the
14 government wishes to proceed with respect to Mr. Reed as the
15 sole defendant for trial despite the fact that there are three
16 other defendants in various stages, some sooner rather than
17 others?  I haven't heard from the defense that the defense is
18 anxious to go to trial alone.

19 Ms. Greenwood.

20 MS. GREENWOOD:  Yes, your Honor.  So what I would say
21 is I think that the difficulty from the government's
22 perspective -- and perhaps what you proposed as a middle ground
23 makes some sense -- is although we have representations from
24 counsel that the remaining defendants will appear in relatively
25 short order, you know, we have been in negotiations since

Teleconference

October and we don't want to end up in a position where we don't move the ball at all with respect to Mr. Reed while we hope that the remaining defendants appear. So we're optimistic and we're hopeful that they will appear but we certainly have no guarantee. And so perhaps a relatively short adjournment of the kind that you're contemplating in the hopes of joining everyone in that schedule, while recognizing that, you know, if the other defendants don't appear, that we may be in a different position by the next conference, may make some sense.

THE COURT: OK. Mr. Yatter, do you want to be heard?

MR. YATTER: Your Honor, this proposal to confer again in May that you have laid out makes sense to us. We won't comment -- we won't speak to, you know, the status of the discussions with the other defendants. Given that the government is still very much in discovery with us, we think that makes sense for a number of reasons.

THE COURT: OK. Great.

MS. GREENWOOD: And I will say, your Honor, you know, we are certainly producing some additional materials, but the vast majority of the government's materials were produced back in December, and so we are making follow-up productions of things primarily that we're then receiving at post indictment, but the vast majority of materials and certainly everything involving Mr. Reed's own personal accounts and that sort of thing has been produced. And like I said, we're working

1  diligently to produce those 3500 and just make sure that's sort

2  of everything that we're receiving in more recent productions

3  is also going out the door.

4              With that said, I think that the Court's proposal for

5  a May date is a reasonable one.

6              THE COURT:  OK.  Mr. Fletcher, can we get a date in

7  mid-May?

8              THE CLERK:  May 11th, 2:30.

9              THE COURT:  All right.  Another conference May 11th,

10  2021, at 2:30 p.m.

11              I will exclude prospectively the time from today until

12  May 11th, 2021, from Speedy Trial Act calculations.  The

13  continuance is designed to assure effective assistance of

14  counsel.  It is necessary because of the complexities of the

15  case and the amount of discovery.  The Court finds that the

16  ends of justice served by ordering the continuance outweigh the

17  best interests of the defendant and the public in a speedy

18  trial.  This order of exclusion is made pursuant to 18 U.S.C.,

19  Section 3161(h)(7)(A).

20              OK.  At the next conference, assuming that discovery

21  is complete, the defense should be in a position to tell me

22  what motions, if any, the defense intends to make so that I can

23  reasonably begin to set the motion and trial schedule.  I want

24  to make sure that I set the trial date as early as I reasonably

25  can so that the parties can block out the time and they're not

L29dreec
                        Teleconference

1    in the position of having other conflicting schedules.
2               OK.  Anything further for me today?
3               MS. GREENWOOD:  Not from the government, your Honor.
4               MR. YATTER:  Your Honor, just one quick note.  With a
5    conference set for May, we may need to come back to you between
6    now and then seeking some limited relief from the travel
7    restrictions for Mr. Reed, but we don't need to do that today.
8    I just wanted to flag it that we may come to you, your Honor,
9    at some point between now and May on that small point.
10              THE COURT:  Sure.  No problem.  If an issue arises and
11   the parties need to make a submission to me simply by way of
12   correspondence, that's fine.  If the parties need another
13   conference with me, just send a letter and we'll arrange
14   another conference.
15              MR. YATTER:  Thank you, your Honor.
16              THE COURT:  OK.  Sure.
17              Anything further?
18              (Pause)
19              OK.  Good to talk to you all.  Be well.  Stay safe.
20   Bye now.
21              MS. GREENWOOD:  Thank you, your Honor.
22              MR. YATTER:  Thank you, Judge.
23              (Adjourned)
24
25