**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                              Plaintiff<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, 100x HOLDINGS LIMITED, ABS GLOBAL TRADING LIMITED, SHINE EFFORT INC LIMITED, HDR GLOBAL SERVICES (BERMUDA) LIMITED, ARTHUR HAYES, BENJAMIN DELO, and SAMUEL REED,<br><br>                              Defendants | Case No. 1:20-cv-08132<br><br>Hon. Mary Kay Vyskocil |

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:_____        │
│ DATE FILED:  8/10/2021      │
└─────────────────────────────┘
```

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS HDR GLOBAL TRADING LIMITED, 100x HOLDINGS LIMITED, SHINE EFFORT INC LIMITED, and HDR GLOBAL SERVICES (BERMUDA) LIMITED**

## I.      INTRODUCTION

On October 1, 2020, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants HDR Global Trading Limited ("HDR"), 100x Holdings Limited (100x"), ABS Global Trading Limited ("ABS"), Shine Effort Inc Limited ("Shine"), and HDR Global Services (Bermuda) Limited ("HDR Services"), all doing business as "BitMEX" (collectively "BitMEX") as well as BitMEX's co-founders Arthur Hayes ("Hayes"), Benjamin Delo ("Delo"), and Samuel Reed ("Reed"), (collectively "Defendants"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2018), and the

Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190

(2020).  ("Complaint," ECF No. 1.)[1]

## II.      CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants HDR,

100x, ABS, Shine, and HDR Services ("Settling Defendants") without a trial on the merits or any

further judicial proceedings, Settling Defendants:

1.      Consent to the entry of this Consent Order for Permanent Injunction, Civil

Monetary Penalty, and Other Equitable Relief Against Defendants HDR, 100x, ABS, Shine, and

HDR Services ("Consent Order");

2.      Affirm that they have read and agreed to this Consent Order voluntarily, and that

no promise, other than as specifically contained herein, or threat, has been made by the CFTC or

any member, officer, agent, or representative thereof, or by any other person, to induce consent

to this Consent Order;

3.      Acknowledge proper service of the summonses and Complaint;

4.      Admit the jurisdiction of this Court over them for purposes of this settlement, and

the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018);

---

[1]  On October 1, 2020, the U.S. Attorney's Office for the Southern District of New York indicted Hayes, Delo, and Reed, along with Greg Dwyer, on charges of: (1) willfully causing a financial institution to violate the Bank Secrecy Act, in violation of 31 U.S.C. §§ 5318(h)(1) and (l), 5322(a) and (c); 31 C.F.R. §§ 1026.210 and 1026.220; and 18 U.S.C. § 2; and (2) conspiracy to commit the same offense, in violation of 18 U.S.C. § 371.  *United States v. Hayes et al.*, 20 CR 500 (JFK) (S.D.N.Y.) ("*United States v. Hayes*").  Hayes, Delo, and Reed pleaded not guilty to the criminal charges; the criminal case remains pending as of the date of this Consent Order.  On February 10, 2021, the U.S. Attorney for the Southern District of New York filed a motion to intervene in this proceeding for the purpose of seeking a stay of discovery.  The Court granted the motion to intervene on March 24, 2021, but denied the motion to stay discovery without prejudice.

5.      Admit that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

6.      Waive:

     (a)      Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018) and 28 U.S.C. § 2412 (2018), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2020), relating to, or arising from, this action;

     (b)      Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

     (c)      Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

     (d)      Any and all rights of appeal from this action;

7.      Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Settling Defendants now or in the future reside outside this judicial district;

8.      Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

9.      Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take positions in other proceedings to which the

Commission is not a party.  Settling Defendants shall comply with this agreement, and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement[2];

10.     By consenting to the entry of this Consent Order, neither admit nor deny the allegations of the Complaint or any Findings of Fact or Conclusions of Law in this Consent Order, except the admissions in Paragraphs 4 and 5 above;

11.     Consent to the use of the Findings of Fact or Conclusions of Law in this Consent Order against the Settling Defendants and any affiliated or successor entities in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and for that limited purpose only agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

12.     Do not consent, however, to the use of this Consent Order, or the Findings of Fact or Conclusions of Law herein, as the sole basis for any other proceeding, including a proceeding in which the registration of Settling Defendants may be affected, brought by the Commission or to which the Commission is a party other than a:  proceeding in bankruptcy or receivership; or proceeding to enforce the terms of this Consent Order;

13.     Do not consent to the use of this Consent Order, or the Findings of Fact or Conclusions of Law herein, by any other party in any other proceeding; and

14.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy, if there is a basis in

---

[2] This provision shall not apply to any actions or public statements by Hayes, Delo, and/or Reed with respect to charges against them in the present action, or to statements by Hayes, Delo, Reed, and/or Greg Dwyer in *United States. v. Hayes*.

4

law and fact to do so, against Settling Defendants in any other proceeding, provided, however, Settling Defendants do not agree that any provision of this Consent Order inures to the benefit of, or confers rights on, any other person or entity to seek any legal or equitable remedy against Settling Defendants that does not otherwise exist independently of this Consent Order; or that this Consent Order and any provision herein is admissible in any proceeding not involving the Commission.

## III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

## A.    Findings of Fact

### The Parties to this Consent Order

15.    Plaintiff **Commodity Futures Trading Commission** is the independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

16.    Defendant **HDR Global Trading Limited** was incorporated in the Seychelles in 2014 as a Seychelles International Business Company.  From no later than November 2014 through at least October 1, 2020 (the "Relevant Period"), HDR has owned and operated the BitMEX trading platform.  "HDR" derives from the first letter of the last names of Hayes, Delo, and Reed, who are the three primary ultimate owners of HDR and its various subsidiaries, each holding approximately a one-third ownership interest in HDR.  HDR has never been registered with the Commission in any capacity.

17.     Defendant **100x Holdings Limited** holds itself out as "the holding group for HDR Global Trading Limited and its assets, including the BitMEX platform, and [BitMEX's] team of best-in-class professionals in finance, web development, and high frequency algorithmic trading."  100x has never been registered with the Commission in any capacity.

18.     Defendant **ABS Global Trading Limited** is a Delaware limited liability company incorporated in 2017 through which BitMEX has conducted certain operations in the United States.  ABS is a subsidiary of HDR.  ABS has never been registered with the Commission in any capacity.

19.     Defendant **Shine Effort Inc Limited** is a Hong Kong limited liability company incorporated in 2014, and a subsidiary of HDR.  During the Relevant Period, Shine was the corporate entity through which BitMEX conducted proprietary trading on its own BitMEX platform.  Shine has never been registered with the Commission in any capacity.

20.     Defendant **HDR Global Services (Bermuda) Limited** is a Bermudian limited liability company incorporated in 2018 that employs certain personnel performing duties for BitMEX.  HDR Services has never been registered with the Commission in any capacity.

### The BitMEX Trading Platform and Products

21.     BitMEX is a peer-to-peer "crypto-products platform" that offers the trading of cryptocurrency derivatives, including derivatives on bitcoin, ether, and litecoin.

22.     Throughout the Relevant Period, BitMEX operated as a common enterprise through a number of affiliated entities, including Settling Defendants HDR, ABS, Shine, and HDR Services, acting through their officers, agents, or employees.

23.     During the Relevant Period, BitMEX offered leveraged trading of cryptocurrency derivatives to retail (non-eligible contract participants ("non-ECPs")) and institutional customers

in the U.S. and throughout the world through BitMEX's website, *www.bitmex.com*, the BitMEX

mobile application, and by direct connection to its trading engine servers via the BitMEX

application programming interface ("API").  Customers in the U.S. placed orders to buy or sell

contracts directly through BitMEX's user interfaces, including the website and API.  During the

Relevant Period, BitMEX acted as the counterparty to certain transactions on its platform.

24.     On May 13, 2016, BitMEX launched its first swap product, a "perpetual bitcoin

U.S. dollar leveraged swap product."  On its website, BitMEX has described its "Perpetual

Contract" (or "perpetual swap contract") as "a product similar to a traditional Futures Contract in

how it trades."

25.     Throughout the Relevant Period, BitMEX conducted certain components of its

business and maintained a presence in the U.S., including maintaining an office in New York

from late 2017 until early 2019 and establishing a San Francisco office in 2017.

26.     During the Relevant Period, BitMEX solicited orders from U.S.-based customers

for futures, options, and swaps through its website and on social media.  The BitMEX website

and social media were available to and accessed by U.S.-based customers.

27.     Throughout the Relevant Period, BitMEX's U.S. customers were able to access

the BitMEX platform from the U.S.—either via API or through the BitMEX website accessed on

customers' own computers located in the U.S. via a virtual private network ("VPN").  BitMEX

was aware that U.S. customers used VPNs to access the BitMEX platform.

28.     During the Relevant Period, BitMEX offered, entered into, confirmed the

execution of, and otherwise conducted activities relating to commodity option transactions in

interstate commerce.  These transactions were not executed on any registered board of trade, nor

was BitMEX registered as a foreign board of trade.

29.     During the Relevant Period, BitMEX solicited or accepted orders for the purchase

or sale of commodities for future delivery; engaged in soliciting or accepting orders for swaps;

engaged in soliciting or accepting orders for retail commodity transactions, and/or acted as a

counterparty to those transactions; and, in connection with these activities, accepted money,

securities, or property, including bitcoin, to margin, guarantee, or secure resulting trades on the

BitMEX platform.  In accordance with Section 1(a)(47)(iii) and (vi) of the Act, 7 U.S.C.

§§ 1a(47) (iii), (vi) (2018), the swaps solicited or accepted by BitMEX included "perpetual

swaps" or "perpetual contracts" on bitcoin, ether, and litecoin.  During the Relevant Period,

BitMEX operated a facility for the trading of swaps—that is, a trading system or platform in

which more than one market participant has the ability to execute or trade swaps with more than

one other market participant on the system or platform—on digital assets including bitcoin,

ether, and litecoin without registering with the CFTC as a designated contract market or a swap

execution facility.

30.     During the Relevant Period, BitMEX employed an inadequate supervisory system

and failed to perform its supervisory duties diligently.  Among other things, BitMEX failed to

implement a customer identification program ("CIP"), including know-your-customer ("KYC")

procedures, that would enable it to identify U.S. persons using the BitMEX platform—or

determine the true identity of the vast majority of its customers, whether from the U.S. or

elsewhere.  BitMEX also failed to implement an adequate anti-money laundering ("AML")

program, which is required to prevent or detect, among other things, terrorist financing or other

criminal activity, and failed to implement procedures to determine whether a customer appears

on lists of known or suspected terrorists or terrorist organizations such as those issued by the

Treasury Department's Office of Foreign Assets Control ("OFAC").

31.     BitMEX represents it has engaged in remedial measures, including the development of an AML program and user verification program.  BitMEX has accelerated the implementation of its enhanced internal controls designed to detect and prevent suspicious transactions, such as the controls embedded in its user verification program; verified the identities of all active users of its platform as of December 2020; appointed a Chief Compliance Officer and hired new AML-dedicated compliance staff; and engaged an outside consultant to conduct reviews and independent testing of BitMEX's AML program, CIP, and KYC policies and procedures.

**B.     Conclusions of Law**

**Jurisdiction and Venue**

32.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

33.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Settling Defendants transacted business within this judicial district.

**Count I—BitMEX's Execution of Futures Transactions on an Unregistered Board of Trade**

34.    By the conduct described above, Settling Defendants HDR, 100x, ABS, Shine, and HDR Services, all acting as a common enterprise and doing business as BitMEX, offered to enter into, entered into, executed or confirmed the execution of transactions involving commodities for future delivery on its platform that was not designated as a contract market and thus violated Section 4(a) of the Act, 7 U.S.C. § 6(a) (2018).

**Count II—BitMEX's Illegal Off-Exchange Commodity Options**

35.    By the conduct described above, Settling Defendants HDR, 100x, ABS, Shine, and HDR Services, all acting as a common enterprise and doing business as BitMEX, offered to enter into, entered into, confirmed the execution of, maintained a position in, or otherwise conducted activity related to any transaction in interstate commerce that is a commodity option transaction not in compliance with and subject to the provisions of this Act, including any Commission rule, regulation, or order thereunder and thus violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2018), and Regulation 32.2, 17 C.F.R. § 32.2 (2020).

**Count III—BitMEX's Failure to Register as a Futures Commission Merchant**

36.    By the conduct described above, Settling Defendants HDR, 100x, ABS, Shine, and HDR Services, all acting as a common enterprise and doing business as BitMEX, acted as an FCM without being registered with the Commission as required under the Act and thus violated Section 4d of the Act, 7 U.S.C. § 6d (2018).

**Count IV—BitMEX's Failure to Register as a Swap Execution Facility or Designated Contract Market**

37.    By the conduct described above, Settling Defendants HDR, 100x, ABS, Shine, and HDR Services, all acting as a common enterprise and doing business as BitMEX, operated a facility for the trading or processing of swaps without being registered as a swap execution

facility or as a designated contract market and thus violated Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1) (2018), and Regulation 37.3(a)(1), 17 C.F.R. § 37.3(a)(1) (2020).

**Count V—BitMEX's Failure to Diligently Supervise its Partners, Officers, Employees, and Agents**

38.     By the conduct described above, Settling Defendants HDR, 100x, ABS, Shine, and HDR Services, all acting as a common enterprise and doing business as BitMEX, failed to diligently supervise the handling by its officers, employees and agents of all commodity interest accounts carried by BitMEX and all other activities relating to its business as a registrant and thus violated Regulation 166.3, 17 C.F.R. § 166.3 (2020).

**Count VI—BitMEX's Failure to Implement an Anti-Money Laundering Program, a Customer Identification Program, and Know-Your-Customer Procedures**

39.     By the conduct described above, Settling Defendants HDR, 100x, ABS, Shine, and HDR Services, all acting as a common enterprise and doing business as BitMEX, failed to comply with the Bank Secrecy Act and certain related regulations which require that a customer identification program be adopted as part of a firm's Bank Secrecy Act compliance program and thus violated Regulation 42.2, 17 C.F.R. § 42.2 (2020).

### IV.     PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

40.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), Settling Defendants HDR, 100x, ABS, Shine, and HDR Services are permanently restrained, enjoined, and prohibited from directly or indirectly:

a.      offering to enter into retail commodity transactions, or contracts for the purchase or sale of bitcoin, litecoin, and ether for future delivery; entering into retail commodity transactions, or contracts for the purchase or sale of bitcoin, litecoin,

and ether for future delivery; confirming the execution of retail commodity transactions, or contracts for the purchase or sale of bitcoin, litecoin, and ether for future delivery; and conducting an office or business in the U.S. for the purpose of soliciting, or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, retail commodity transactions or contracts for the purchase or sale of bitcoin, litecoin, and ether for future delivery without conducting their futures transactions on or subject to the rules of a board of trade that is designated or registered by the CFTC as a contract market, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2018).

b.    offering to enter into, entering into, confirming the execution of, maintaining positions in, or otherwise conducting activities relating to commodity option transactions in interstate commerce which do not comply with the Act or any Regulations, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2018), and Regulation 32.2, 17 C.F.R. § 32.2 (2020).

c.    engaging in soliciting or accepting orders for the purchase or sale of commodities for future delivery, engaging in soliciting or accepting orders for swaps, engaging in soliciting or accepting orders for agreements, contracts or transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (2018) (retail commodity transactions), and/or acting as a counterparty in agreements, contracts, or transactions described in 7 U.S.C. § 2(C)(2)(D)(i), and, in connection with these activities, accepting money, securities, or property (or extended credit in lieu thereof) to margin, guarantee, or secure resulting trades, in violation of Section 4d of the Act, 7 U.S.C. § 6d (2018).

d.    operating a facility for the trading of swaps—that is, a trading system or platform in which more than one market participant has the ability to execute or trade swaps with more than one other market participant on the system or platform—on digital assets including bitcoin, ether, and litecoin without registering with the CFTC as a designated contract market or a swap execution facility in violation of Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1) (2018), and Regulation 37.3(a)(1), 17 C.F.R. § 37.3(a)(1) (2020).

e.    failing to perform its supervisory duties diligently, in particular by failing to implement a Customer Identification Program, failing to implement and conduct Know-Your-Customer procedures, failing to implement Anti-Money Laundering procedures, and by failing to ensure that their partners, officers, employees, and agents lawfully and appropriately handle all commodity interest accounts, in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2020).

f.    failing to implement a Customer Identification Program, failing to implement Know-Your-Customer policies and procedures, failing to implement an Anti-Money Laundering program, failing to retain required customer information, and failing to implement procedures to determine whether a customer appears on lists of known or suspected terrorists or terrorist organizations such as those issued by the OFAC, in violation of Regulation 42.2, 17 C.F.R. § 42.2 (2020).

## V.    MONETARY AND OTHER EQUITABLE RELIEF

**A.    Civil Monetary Penalty**

42.    Settling Defendants, jointly and severally, shall pay a civil monetary penalty in the amount of One Hundred Million Dollars ($100,000,000) ("CMP Obligation").  Settling

Defendants shall pay Fifty Million Dollars ($50,000,000) of the CMP Obligation to the

Commission within ten business days of the date of the entry of this Consent Order in the

manner described below in paragraph 45.  The remaining Fifty Million Dollars ($50,000,000) of

the CMP Obligation shall be offset by payments made by, or amounts credited to, Defendants

HDR, 100x, ABS, Shine, and HDR Services pursuant to the Consent to the Assessment of Civil

Monetary Penalty entered by the Financial Crimes Enforcement Network in the matter of *In re:*

*HDR Global Trading Limited, 100x Holdings Limited, ABS Global Trading Limited, Shine Effort*

*Inc Limited, HDR Global Services (Bermuda) Limited d/b/a BITMEX,* Number 2021-XXX*,*

("FinCEN Consent").  If not offset by payments or credits as provided here, or being collected by

FinCEN in full, any outstanding portions of the CMP Obligation shall be paid to the Commission

within ten days from the date required for payment of that portion of the CMP Obligation as set

forth in the FinCEN Consent or any notices provided for thereunder, including any Notices of

Negative Findings, in the manner described below in paragraph 45.

      43.     Settling Defendants HDR, 100x, ABS, Shine, and HDR Services shall provide to

the Commission information sufficient to determine the amounts that have been paid to or

credited by FinCEN pursuant to the FinCEN Consent within ten days of any such payment or

credit.

      44.     If the first Fifty Million dollars ($50,000,000) of the CMP Obligation is not paid

in full within ten business days of the date of entry of this Consent Order, then post-judgment

interest shall accrue on the unpaid portion of the first $50,000,000 of the CMP Obligation

beginning on the date of entry of this Consent Order and shall be determined by using the

Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C.

§ 1961 (2018).  If the remaining Fifty Million dollars ($50,000,000) of the CMP Obligation is

not paid to, credited by, or being collected by FinCEN in full by the dates set forth in the

FinCEN Consent or any notices provided for thereunder, including any Notices of Negative

Findings, then post-judgment interest shall accrue on the unoffset, uncredited, or unpaid portion

of the CMP Obligation beginning from the date of the entry of the Consent Order and shall be

determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order

pursuant to 28 U.S.C. § 1961 (2018).

45.     Settling Defendants shall pay the CMP Obligation, as well as any post-judgment

interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's

check, or bank money order.  If payment is to be made other than by electronic funds transfer,

then the payment shall be made payable to the Commodity Futures Trading Commission and

sent to the address below:

> CFTC
> C/O ESC/AMK-326; RM 265
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Settling Defendants shall contact Marie Thorne

or her successor at the address above to receive payment instructions and shall fully comply with

those instructions.  Settling Defendants shall accompany payment of the CMP Obligation with a

cover letter that identifies Settling Defendants and the name and docket number of this

proceeding.  Settling Defendants shall simultaneously transmit copies of the cover letter and the

form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**B.      Provisions Related to Monetary Sanctions**

46.     Partial Satisfaction:  Acceptance by the Commission of any partial payment of Settling Defendants' CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**C.      Cooperation**

47.     Settling Defendants shall cooperate with the Commission, including the Commission's Division of Enforcement, in this action and in any current or future Commission civil litigation or administrative matter related to, or arising from, this action.

**D.      Settling Defendants' Certifications**

48.     Settling Defendants have certified to the Commission that:  (i) anyone located, incorporated or otherwise established in, or a resident of, the U.S. is prohibited from accessing Settling Defendants' services, including the BitMEX trading platform; (ii) all active users of the BitMEX platform have undergone BitMEX's user-verification process, which incorporates BitMEX's "US Persons" policy and generally prohibits any user identified as a US Person from accessing the BitMEX platform on a going-forward basis; and (iii) all users identified as US Persons by BitMEX's user-verification procedures, or unverified users, have in fact been blocked from trading on the platform or making withdrawals.

49.     Settling Defendants have also certified to the Commission that as of June 30, 2021, BitMEX will no longer maintain any operations or business functions in the United States but for personnel performing information technology, systems maintenance, cyber threat/intelligence, security testing, and security assurance functions; corresponding administrative and compliance services; and board member participation.  Settling Defendants

further certify that the personnel described in this paragraph 49 are not directly or indirectly involved with marketing or solicitation of customers.

50.    No later than ninety days after the entry of this Consent Order, BitMEX's Chief Compliance Officer, Malcolm Wright or his successor, shall certify in writing to the Commission that BitMEX has:  (i) removed all business operations and personnel from the United States, with the limited exception of certain employees responsible only for information technology, systems maintenance, cyber threat/intelligence, security testing, and security assurance functions, corresponding administrative and compliance personnel, and board member participation, as described above in paragraph 49; and (ii) blocked and will continue to block all US Persons, as defined in BitMEX's KYC policies and procedures, from its platform, unless and until BitMEX obtains required registrations from the Commission.

## VI.    MISCELLANEOUS PROVISIONS

51.    Until such time as Settling Defendants satisfy in full their CMP Obligation, this Consent Order, upon the commencement by or against any Settling Defendant of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of any Settling Defendant's debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

52.     Notice:  All notices and certifications required to be given by any provision in this Consent Order, except as set forth in paragraph 51, above, shall be sent by email and by certified mail as follows:

Notice to Commission:

> Robert T. Howell, Deputy Director
> Commodity Futures Trading Commission, Chicago Regional Office
> 525 West Monroe, Suite 1100
> Chicago, IL  60661
> *RHowell@cftc.gov*

Notice to Settling Defendants:

| | |
|---|---|
| HDR Global Trading Limited | HDR Global Trading Limited |
| 100x Holdings Limited | 100x Holdings Limited |
| ABS Global Trading Limited | ABS Global Trading Limited |
| Shine Effort Inc Limited | Shine Effort Inc Limited |
| HDR Global Services (Bermuda) Limited | HDR Global Services (Bermuda) Limited |
| c/o Kathleen McArthur, Esq. | c/o Gregory Mocek |
| Sullivan & Cromwell LLP | Allen & Overy LLP |
| 125 Broad Street | 1101 New York Avenue |
| New York, NY  10004 | Washington, DC  20005 |
| *mcarthurk@sullcrom.com* | *gregory.mocek@allenovery.com* |

All such notices to the Commission shall reference the name and docket number of this action.

53.     Change of Address/Phone:  Until such time as Settling Defendants satisfy in full their CMP Obligation as set forth in this Consent Order, Settling Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

54.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

55.     Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

56.     Waiver:  The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

57.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

58.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Settling Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Defendants.

59.     Authority:  Alexander Hoeptner hereby warrants that this Consent Order has been duly authorized by Settling Defendants HDR, 100x, ABS, Shine, and HDR Services and he has been duly empowered to sign and submit this Consent Order on behalf of Settling Defendants HDR, 100x, ABS, Shine, and HDR Services.

60.     Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

61.     Contempt:  Settling Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

62.     Agreements and Undertakings:  Settling Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Injunctive Relief, Civil Monetary Penalty, and Other Equitable Relief Against Defendants HDR Global Trading Limited, 100x Holdings Limited, ABS Global Trading Limited, Shine Effort Inc Limited, and HDR Global Services (Bermuda) Limited* forthwith and without further notice.

**IT IS SO ORDERED** on this 10th day of August, 2021.

**MARY KAY VYSKOCIL**
**UNITED STATES DISTRICT JUDGE**

**CONSENTED TO AND APPROVED BY:**

Defendants HDR Global Trading Limited,
100x Holdings Limited, ABS Global Trading
Limited, Shine Effort Inc Limited, HDR
Global Services (Bermuda) Limited,

_____
HDR Global Trading Limited

Date: _____ 19 July 2021

_____
100x Holdings Limited

Date: _____ 19 July 2021

_____
ABS Global Trading Limited

Date: _____ 19 July 2021

_____
Shine Effort Inc Limited

Date: _____ 19 July 2021

_____
HDR Global Services (Bermuda) Limited

Date: _____ 19 July 2021

Plaintiff Commodity Futures Trading
Commission

_____
Elizabeth N. Pendleton
Chief Trial Attorney
Commodity Futures Trading Commission
525 West Monroe
Chicago, IL  60661
ependleton@cftc.gov

Date: _____ July 27, 2021

**Approved as to Form:**

Kenneth Raisler
Kathleen McArthur
Attorneys for Defendants HDR Global
Trading Limited, 100x Holdings Limited,
ABS Global Trading Limited, Shine Effort
Inc Limited, and HDR Global Services
(Bermuda) Limited,

Date: 7/27/2021

Gregory Mocek
David Esseks
Eugene Ingoglia
Attorneys for Defendants HDR Global
Trading Limited, 100x Holdings Limited,
ABS Global Trading Limited, Shine Effort
Inc Limited, and HDR Global Services
(Bermuda) Limited,

Date: 7/27/2021