UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                       Plaintiff<br><br>              v.<br><br>HDR GLOBAL TRADING LIMITED, 100x HOLDINGS LIMITED, ABS GLOBAL TRADING LIMITED, SHINE EFFORT INC LIMITED, HDR GLOBAL SERVICES (BERMUDA) LIMITED, ARTHUR HAYES, BENJAMIN DELO, and SAMUEL REED,<br><br>                       Defendants | Case No. 1:20-cv-08132<br><br>Hon. Laura Taylor Swain |

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF
<u>AGAINST DEFENDANT ARTHUR HAYES</u>**

**I.     INTRODUCTION**

On October 1, 2020, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants HDR Global Trading Limited ("HDR"), 100x Holdings Limited (100x"), ABS Global Trading Limited ("ABS"), Shine Effort Inc Limited ("Shine"), and HDR Global Services (Bermuda) Limited ("HDR Services"), all doing business as "BitMEX" (collectively "BitMEX"), as well as BitMEX's co-founders Arthur Hayes ("Hayes"), Benjamin Delo ("Delo"), and Samuel Reed ("Reed"), (collectively "Defendants"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2021).

("Complaint," ECF No. 1.)[1] On August 10, 2021, the district court entered a consent order of permanent injunction against the five defendant companies doing business as BitMEX (ECF No. 62), leaving the action pending against the three individual defendants, Hayes, Delo and Reed.

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Arthur Hayes ("Hayes") without a trial on the merits or any further judicial proceedings, Hayes:

1. Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges proper service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him for purposes of this settlement, and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

---

[1] On October 1, 2020, the U.S. Attorney's Office for the Southern District of New York charged Hayes, Delo, and Reed, along with Greg Dwyer, with: (1) willfully causing a financial institution to violate the Bank Secrecy Act, in violation of 31 U.S.C. §§ 5318(h)(1) and (l), 5322(a) and (c); 31 C.F.R. §§ 1026.210 and 1026.220; and 18 U.S.C. § 2; and (2) conspiracy to commit the same offense, in violation of 18 U.S.C. § 371. *United States v. Hayes, et al.*, 20 CR 500 (JGK) (S.D.N.Y.). On February 24, 2022, Hayes entered a guilty plea to Count One of the indictment. Delo and Reed have also entered guilty pleas to Count One of the indictment. Hayes is scheduled to be sentenced on May 18, 2022. The criminal case remains pending against Dwyer as of the date of this Consent Order.

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7. Waives:

   (a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2021), relating to, or arising from, this action;

   (b) Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

   (c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

   (d) Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Hayes now or in the future resides outside this judicial district;

9. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is

without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take positions in other proceedings to which the Commission is not a party.  Hayes shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11. By consenting to the entry of this Consent Order, neither admits nor denies the allegations of the Complaint or any Findings of Fact or Conclusions of Law in this Consent Order, except the admissions in Paragraphs 4 and 5 above;

12. Admits the facts set forth during his February 24, 2022 plea allocution in *United States v. Hayes et al.*, 20 CR 500 (JGK) (S.D.N.Y.), a copy of which is attached to the parties' Joint Motion for Entry of Consent Order;

13. Consents to the use of the Findings of Fact or Conclusions of Law in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

14. Does not consent, however, to the use of this Consent Order, or the Findings of Fact or Conclusions of Law herein, as the sole basis for any other proceeding, including a proceeding in which the registration of any Defendant may be affected, brought by the Commission or to which the Commission is a party other than a:  proceeding in bankruptcy or receivership; or proceeding to enforce the terms of this Consent Order;

15. Does not consent to the use of this Consent Order, or the Findings of Fact or Conclusions of Law herein, by any other party in any other proceeding; and

16. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy, if there is a basis in law and fact to do so, against Hayes in any other proceeding; provided, however, that Hayes does not agree that any provision of this Consent Order inures to the benefit of, or confers rights on, any other person or entity to seek any legal or equitable remedy that does not exist independently of this Consent Order, or that this Consent Order or any provision herein is admissible in any proceeding not involving the Commission.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**A.   Findings of Fact**

**The Parties to this Consent Order**

17. Plaintiff **Commodity Futures Trading Commission** is the independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

18. Defendant **Arthur Hayes** is a co-founder and co-owner of BitMEX. Hayes has never been registered with the Commission in any capacity.

**The BitMEX Trading Platform and Products**

19. BitMEX is a peer-to-peer "crypto-products platform" that offers the trading of cryptocurrency derivatives, including derivatives on bitcoin, ether, and litecoin.

20. From November 2014 to October 1, 2020 (the "Relevant Period"), BitMEX operated as a common enterprise through a number of affiliated entities, including HDR, 100x, ABS, Shine, and HDR Services, acting through their officers, agents, or employees.

21. During the Relevant Period, BitMEX offered leveraged trading of cryptocurrency derivatives to retail (non-eligible contract participants ("non-ECPs")) and institutional customers through BitMEX's website, *www.bitmex.com*, and by direct connection to its trading engine servers via the BitMEX application programming interface ("API"). Customers in the U.S. placed orders to buy or sell contracts directly through BitMEX's user interfaces, including the website and API. During the Relevant Period, BitMEX acted as the counterparty to certain transactions on its platform.

22. On May 13, 2016, BitMEX launched its first swap product, a "perpetual bitcoin U.S. dollar leveraged swap product." On its website, BitMEX has described its "Perpetual Contract" (or "perpetual swap contract") as "a product similar to a traditional Futures Contract in how it trades."

23. During the Relevant Period, BitMEX conducted certain components of its business and maintained a presence in the U.S., including maintaining an office in New York from late 2017 until early 2019 and establishing a San Francisco office in 2017.

24. During the Relevant Period, BitMEX solicited orders from U.S.-based customers for futures, options, and swaps through its website and on social media that were available to and accessed by U.S.-based customers.

25. Throughout the Relevant Period, BitMEX's U.S. customers were able to access the BitMEX platform from the U.S.—either via API or through the BitMEX website accessed on

customers' own computers located in the U.S. via a virtual private network ("VPN").  BitMEX was aware that U.S. customers used VPNs to access the BitMEX platform.

26. During the Relevant Period, BitMEX offered, entered into, confirmed the execution of, and otherwise conducted activities relating to commodity option transactions in interstate commerce.  These transactions were not executed on any registered board of trade, nor was BitMEX registered as a foreign board of trade.

27. During the Relevant Period, BitMEX solicited or accepted orders for the purchase or sale of commodities for future delivery; engaged in soliciting or accepting orders for swaps; engaged in soliciting or accepting orders for retail commodity transactions, and/or acted as a counterparty to those transactions; and, in connection with these activities, accepted money, securities, or property, including bitcoin, to margin, guarantee, or secure resulting trades on the BitMEX platform.  In accordance with Section 1(a)(47)(iii) and (vi) of the Act, 7 U.S.C. §§ 1a(47) (iii), (vi), the swaps solicited or accepted by BitMEX included "perpetual swaps" or "perpetual contracts" on bitcoin, ether, and litecoin.  During the Relevant Period, BitMEX operated a facility for the trading of swaps—that is, a trading system or platform in which more than one market participant has the ability to execute or trade swaps with more than one other market participant on the system or platform—on digital assets including bitcoin, ether, and litecoin without registering with the CFTC as a designated contract market or a swap execution facility.

28. During the Relevant Period, BitMEX employed an inadequate supervisory system and failed to perform its supervisory duties diligently.  Among other things, BitMEX failed to implement a customer identification program ("CIP"), including know-your-customer ("KYC") procedures to identify U.S. persons using the BitMEX platform—or determine the true identity

of the vast majority of its customers, whether from the U.S. or elsewhere. BitMEX also failed to implement an adequate anti-money laundering ("AML") program, which is required to prevent or detect, among other things, terrorist financing or other criminal activity, and failed to implement procedures to determine whether a customer appears on lists of known or suspected terrorists or terrorist organizations such as those issued by the Treasury Department's Office of Foreign Assets Control ("OFAC").

### Hayes' Control Over BitMEX

29. During the Relevant Period, Hayes, along with others, controlled the operations of BitMEX. Hayes was one of three co-founders of BitMEX and he was a co-owner of BitMEX. Hayes served as BitMEX's Chief Executive Officer and was primarily responsible for strategic decisions, business development, marketing, and management of the BitMEX enterprise.

30. Hayes, along with others, was involved in decisions concerning whether to pursue regulatory approval for the platform and whether to implement KYC or AML policies and procedures.

31. During the Relevant Period, employees managing BitMEX's business ultimately acted under the direction and control of Hayes, along with others.

**B.   Conclusions of Law**

### Jurisdiction and Venue

32. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for injunctive relief or to enforce compliance

with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

33. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e).

**Violations of the Act by BitMEX and Hayes**

34. As set forth in the Order entered by this Court on August 10, 2021 (ECF No. 62), by the conduct described above, Defendants HDR, 100x, ABS, Shine, and HDR Services, all acting as a common enterprise and doing business as BitMEX:

    a. offered to enter into, entered into, executed or confirmed the execution of transactions involving commodities for future delivery on its platform that was not designated as a contract market and thus violated Section 4(a) of the Act, 7 U.S.C. § 6(a);

    b. offered to enter into, entered into, confirmed the execution of, maintained a position in, or otherwise conducted activity related to any transaction in interstate commerce that is a commodity option transaction not in compliance with and subject to the provisions of this Act, including any Commission rule, regulation, or order thereunder and thus violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2 (2021);

    c. acted as an FCM without being registered with the Commission as required under the Act and thus violated Section 4d of the Act, 7 U.S.C. § 6d;

    d. operated a facility for the trading or processing of swaps without being registered as a swap execution facility or as a designated contract market and thus violated

      Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1), and Regulation 37.3(a)(1),

      17 C.F.R. § 37.3(a)(1) (2021);

  e. failed to diligently supervise the handling by its officers, employees and agents of all commodity interest accounts carried by BitMEX and all other activities relating to its business as a registrant and thus violated Regulation 166.3, 17 C.F.R. § 166.3 (2021); and

  f. failed to comply with the Bank Secrecy Act and certain related regulations which require that a customer identification program be adopted as part of a firm's Bank Secrecy Act compliance program and thus violated Regulation 42.2, 17 C.F.R. § 42.2 (2021).

35. Hayes is liable as a control person of BitMEX for these violations. Hayes controlled BitMEX, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, the foregoing acts of BitMEX in violation of the Act; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Hayes is liable for these violations by BitMEX.

### IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

36. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Hayes is permanently restrained, enjoined, and prohibited from directly or indirectly:

  a. offering to enter into retail commodity transactions, or contracts for the purchase or sale of bitcoin, litecoin, and ether for future delivery; entering into retail commodity transactions, or contracts for the purchase or sale of bitcoin, litecoin, and ether for future delivery; confirming the execution of retail commodity

    transactions, or contracts for the purchase or sale of bitcoin, litecoin, and ether for future delivery; and conducting an office or business in the U.S. for the purpose of soliciting, or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, retail commodity transactions or contracts for the purchase or sale of bitcoin, litecoin, and ether for future delivery without conducting such futures transactions on or subject to the rules of a board of trade that is designated or registered by the CFTC as a contract market, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a).

b.  offering to enter into, entering into, confirming the execution of, maintaining positions in, or otherwise conducting activities relating to commodity option transactions in interstate commerce which do not comply with the Act or any Regulations, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2 (2021).

c.  engaging in soliciting or accepting orders for the purchase or sale of commodities for future delivery, engaging in soliciting or accepting orders for swaps, engaging in soliciting or accepting orders for agreements, contracts or transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (retail commodity transactions), and/or acting as a counterparty in agreements, contracts, or transactions described in 7 U.S.C. § 2(C)(2)(D)(i), and, in connection with these activities, accepting money, securities, or property (or extended credit in lieu thereof) to margin, guarantee, or secure resulting trades, in violation of Section 4d of the Act, 7 U.S.C. § 6d.

      d.      operating a facility for the trading of swaps—that is, a trading system or platform in which more than one market participant has the ability to execute or trade swaps with more than one other market participant on the system or platform—on digital assets including bitcoin, ether, and litecoin without registering with the CFTC as a designated contract market or a swap execution facility in violation of Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1), and Regulation 37.3(a)(1), 17 C.F.R. § 37.3(a)(1) (2021).

      e.      failing to perform supervisory duties diligently, in particular by failing to implement a Customer Identification Program, failing to implement and conduct Know-Your-Customer procedures, failing to implement Anti-Money Laundering procedures, and by failing to ensure that his partners, officers, employees, and agents lawfully and appropriately handle all commodity interest accounts, in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2021).

      f.      failing to implement a Customer Identification Program, failing to implement Know-Your-Customer policies and procedures, failing to implement an Anti-Money Laundering program, failing to retain required customer information, and failing to implement procedures to determine whether a customer appears on lists of known or suspected terrorists or terrorist organizations such as those issued by the OFAC, in violation of Regulation 42.2, 17 C.F.R. § 42.2 (2021).

## V. MONETARY AND OTHER EQUITABLE RELIEF

**A.    Civil Monetary Penalty**

37.    Hayes shall pay a civil monetary penalty in the amount of Ten Million Dollars ($10,000,000) ("CMP Obligation"). If the CMP Obligation is not paid within ten business days

of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

38. Hayes shall pay the CMP Obligation, as well as any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amc-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Hayes or his agent shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Hayes or his agent shall accompany payment of the CMP Obligation with a cover letter that identifies him as payor and the name and docket number of this proceeding. Hayes or his agent shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

B. **Provisions Related to Monetary Sanctions**

39. Partial Satisfaction:  Acceptance by the Commission of any partial payment of Hayes' CMP Obligation shall not be deemed a waiver of his obligation to make further payments

pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI.  MISCELLANEOUS PROVISIONS

40. Until such time as Hayes satisfies in full his CMP Obligation, this Consent Order, upon the commencement by or against Hayes of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of any of Hayes' debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

41. Notice:  All notices and certifications required to be given by any provision in this Consent Order, except as set forth in paragraph 40, above, shall be sent by email and by certified mail as follows:

> Notice to Commission:
>
> Robert T. Howell, Deputy Director
>
> Commodity Futures Trading Commission, Chicago Regional Office
> Metcalfe Federal Building
> 77 W. Jackson Blvd., Suite 800
> Chicago, IL  60604
> RHowell@cftc.gov

Notice to Hayes:

James J. Benjamin Jr.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
JBenjamin@AkinGump.com

All such notices to the Commission shall reference the name and docket number of this action.

42. Change of Address/Phone: Until such time as Hayes satisfies in full his CMP Obligation as set forth in this Consent Order, Hayes shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

43. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

44. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

45. Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

46. Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Hayes to modify or for relief from the terms of this Consent Order.

47. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Hayes, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Hayes.

48. Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

49. Contempt:  Hayes understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

50. Agreements and Undertakings:  Hayes shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Injunctive Relief, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Arthur Hayes* forthwith and without further notice.

**IT IS SO ORDERED** on this __5th__ day of _____May_____, 2022.

_____
**UNITED STATES DISTRICT JUDGE**

**CONSENTED TO AND APPROVED BY:**

Defendant Arthur Hayes,

*/s/ Arthur Hayes*

_____
Arthur Hayes

Date: 3/28/2022

Plaintiff Commodity Futures Trading Commission

*/s/ Elizabeth N. Pendleton*

Elizabeth N. Pendleton
Chief Trial Attorney
Commodity Futures Trading Commission
525 West Monroe
Chicago, IL 60661
ependleton@cftc.gov

Date: 5/3/22

**Approved as to Form:**

_____
James J. Benjamin Jr.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
*JBenjamin@AkinGump.com*

Attorney for Defendant Arthur Hayes

Date: ___3/25/22___